UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALLSTAR MARKETING GROUP, LLC,
         Plaintiff

  - against -

ALI DROPSHIPPING SUPPORT STORE, ALIEXPRESS GLOBAL DROPSHIPPING STORE, ALIHOME DESIGN STORE, ALINA LIVING STORE, BR SERVICE STORE, CAIDA STORE, COOCNICO OFFCIAL STORE, DONGGUAN AI CHENG TOYS CO., LTD., DROPSHIP-007 STORE, DROPSHIPPING HOUSE901 STORE, EFDKC OFFCIAL CAR ACCESSORIES STORE, EXQUISITE LIFE 365 STORE, FANTASY H-OME & LIFE STORE, FOUR SEASONS' SONG, GUANGZHOU HAPPY ISLAND TOYS CO., LTD., H & M LUB-AN STORE, HEQU FASHION, HUNAN HECHENG YUANMAI EQUIPMENT CO., LTD., JESSIC STORE, JIANDE JADE TEXTILES CO., LTD., JOYLIVE STORE, JOYLOVE STORE, LITTLE FOR BABY STORE, MARKETHUB STORE, MEIHUA COSMETICS (HUIZHOU) CO., LTD., MSCARTOON STORE, NINGBO SUNREAL ELECTRONIC CO., LTD., SHANGHAI GOT GIFT CO., LTD., SHANGHAI ZHEYI TRADING CO., LTD., SHENZHEN NEWSTAR ELECTRONIC TECHNOLOGY CO., LTD., SHENZHEN TUOYI ELECTRONIC COMMERCE CO., LTD., SHOP4980079 STORE, SHOP5599062 STORE, SHOP910968013 STORE, SHOP910976005 STORE, SHOP911089025 STORE, SINDAX OFFICIAL STORE, SUERTE HAPPYNESS STORE, SWEETY &JUMPING GARDEN STORE, TOPSEXTOYS WORLD STORE, WARM LIGHTING LIFE STORE, YANGZHOU CREATIVE TOYS AND GIFTS CO., LTD., YANGZHOU HAITONG TEXTILE PRODUCTS CO., LTD., YANGZHOU HOME KA CRAFTS LTD., YIWU BINGGOU TOYS CO., LTD., YIWU JIALING IMPORT AND EXPORT CO., LTD., YIWU LENORA TRADING CO., LTD., YIWU ZHANGHUOQING E-COMMERCE FIRM, YOUR HAPPINESS IS OUR PRIORITY STORE, ZAKONA 2BIKINI STORE, ZXCXZ HOUSEHOLDAPPLIANCE STORE and ZY FOR DROP SHIPPING STORE,

         Defendants.

**PRELIMINARY INJUNCTION ORDER**

21 Civ. 333 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

WHEREAS, Plaintiff having moved ex parte on January 14, 2021 against Defendants Ali Dropshipping Support Store, Aliexpress Global Dropshipping Store, Alihome Design Store, Alina living Store, BR service Store, CAIDA Store, Coocnico Offcial Store, Dongguan Ai Cheng Toys Co., Ltd., Dropship-007 Store, Dropshipping House901 Store, EFDKC Offcial Car Accessories Store, Exquisite life 365 Store, Fantasy H-OME & Life Store, Four Seasons' Song, Guangzhou Happy Island Toys Co., Ltd., H & M LuB-an Store, Hequ fashion, Hunan Hecheng Yuanmai Equipment Co., Ltd., JESSIC Store, Jiande Jade Textiles Co., Ltd., JOYLIVE Store, Joylove Store, Little For Baby Store, Markethub Store, Meihua Cosmetics (Huizhou) Co., Ltd., mscartoon Store, Ningbo Sunreal Electronic Co., Ltd., Shanghai Got Gift Co., Ltd., Shanghai Zheyi Trading Co., Ltd., Shenzhen Newstar Electronic Technology Co., Ltd., Shenzhen Tuoyi Electronic Commerce Co., Ltd., Shop4980079 Store, Shop5599062 Store, Shop910968013 Store, Shop910976005 Store, Shop911089025 Store, Sindax Official Store, Suerte Happyness Store, Sweety &Jumping garden Store, TopSextoys World Store, Warm Lighting Life Store, Yangzhou Creative Toys and Gifts Co., Ltd., Yangzhou Haitong Textile Products Co., Ltd., Yangzhou Home Ka Crafts Ltd., Yiwu Binggou Toys Co., Ltd., Yiwu Jialing Import And Export Co., Ltd., Yiwu Lenora Trading Co., Ltd., Yiwu Zhanghuoqing E-Commerce Firm, Your Happiness Is Our Priority Store, zakona 2bikini Store, ZXCXZ HouseholdAppliance Store and ZY For Drop Shipping Store (collectively referred to as "Defendants") for the following:  (1) a temporary restraining order ("TRO"); (2) an order restraining Merchant

Storefronts[1] and Defendants' Assets[2] with Financial Institutions[3]; (3) an order to show cause why a preliminary injunction should not issue; (4) an order authorizing bifurcated and alternative service and (5) an order authorizing expedited discovery ("Application");

WHEREAS, the Court entered an Order granting Plaintiff's Application on January 21, 2021, which directed Defendants to appear telephonically on February 4, 2021 at 11:00 a.m. to show cause why a preliminary injunction should not issue ("Show Cause Hearing");

WHEREAS, on January 29, 2021, Plaintiff filed a letter request to modify and extend the TRO;

WHEREAS, on February 1, 2021, the Court entered an Order granting Plaintiff's request, extending the briefing deadlines, adjourning the Show Cause Hearing to February 11, 2021 at 9:00 a.m. and extending the TRO to the new date of the Show Cause Hearing ("February 1, 2021 Order");

WHEREAS, on February 5, 2021, pursuant to the alternative methods of service authorized by the TRO, Plaintiff served the Summons, Complaint, TRO, all papers filed in support of the Application and the February 1, 2021 Order on each and every Defendant, except

---

[1] Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them.

[2] Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad).

[3] Any banks, financial institutions, credit card companies and payment processing agencies, such as PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), the Alibaba Group d/b/a Alibaba.com payment services (e.g., Alipay.com Co., Ltd., Ant Financial Services Group), PingPong Global Solutions, Inc. ("PingPong") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defendants.

Defendants Dropship-007 Store, Joylove Store and mscartoon Store, who were subsequently served on February 8, 2021;

WHEREAS, on February 10, 2021, the Court entered an Order adjourning the Show Cause Hearing to February 18, 2021 at 9:00 a.m. and extending the TRO to the new date of the Show Cause Hearing ("February 10, 2021 Order");

WHEREAS, on February 18, 2021 at 9:00 a.m., Plaintiff appeared at the Show Cause Hearing, but no Defendants appeared.

## **ORDER**

1. The injunctive relief previously granted in the TRO shall remain in place through the pendency of this litigation, and issuing this Order is warranted under Federal Rule of Civil Procedure 65 and Section 34 of the Lanham Act.

   a) Accordingly, Defendants are hereby restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

      i. manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products[4] or any other products bearing the Happy Nappers Marks[5] and/or Happy Nappers Works[6] and/or marks or artwork that are

---

[4] Products bearing or used in connection with the Happy Nappers Marks and/or Happy Nappers Works, and/or products in packaging and/or containing labels and/or hang tags bearing the Happy Nappers Marks and/or Happy Nappers Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the Happy Nappers Marks and/or Happy Nappers Works and/or products that are identical or confusingly or substantially similar to the Happy Nappers Products.

[5] U.S. Trademark Registration Nos.: 6,102,208 for "HAPPY NAPPERS" for goods in Class 20 and 24; and 3,998,335 for "HAPPY NAPPERS" for goods in Class 28.

[6] U.S. Copyright Reg. Nos.: VA 2-227-806 covering Shak the Shark; VA 2-227-789 covering Arianna the White Unicorn; VA 2-227-807 covering Duncan the Dragon; VA 2-227-808 covering

      confusingly or substantially similar to, identical to and constitute a counterfeiting and/or infringement of the Happy Nappers Marks and/or Happy Nappers Works;

ii. directly or indirectly infringing in any manner Plaintiff's Happy Nappers Marks and/or Happy Nappers Works;

iii. using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Happy Nappers Marks and/or Happy Nappers Works, to identify any goods or services not authorized by Plaintiff;

iv. using Plaintiff's Happy Nappers Marks and/or Happy Nappers Works or any other marks and/or artwork that are confusingly or substantially similar to the Happy Nappers Marks and/or Happy Nappers Works on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products;

v. using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed,

---

Lilly the Lady Bug; VA 2-227-810 covering Monique the Pink Unicorn; VA 2-227-816 covering Kodiak the Grey Husky; VA 2-227-818 covering Dusty the Yellow Dog; and VA 2-227-820 covering Charlotte the Pink Kitty.

5

      promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities and Plaintiff;

  vi. secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products and/or (ii) any computer files, data, business records, documents or any other records or evidence relating to their User Accounts[7], Merchant Storefronts or Defendants' Assets and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

  vii. effecting assignments or transfers, forming new entities or associations, or creating and/or utilizing any other platform, User Account, Merchant Storefront or any other means of importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products for the purposes of circumventing or otherwise avoiding the prohibitions set forth in this Order; and

  viii. knowingly instructing, aiding or abetting any other person or business entity in engaging in any of the activities referred to in subparagraphs 1(a)(i) through 1(a)(vii) above and 1(b)(i) through 1(b)(ii) and 1(c)(i) below.

b) Accordingly, the Third Party Service Providers[8] and Financial Institutions are hereby

---

[7] Any and all websites and any and all accounts with online marketplace platforms such as Alibaba and AliExpress, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them.

[8] Online marketplace platforms, including, without limitation, those owned and operated, directly or indirectly by Alibaba and/or AliExpress, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them

6

restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

    i. secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying Defendants' Assets from or to Defendants' Financial Accounts until further ordered by this Court;

    ii. secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with any computer files, data, business records, documents or any other records or evidence relating to the Defendants' User Accounts, Merchant Storefronts, Defendants' Assets and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products; and

    iii. knowingly instructing, aiding, or abetting any other person or business entity in engaging in any of the activities referred to in subparagraphs 1(a)(i) through 1(a)(vii) and 1(b)(i) through 1(b)(ii) above.

c) Accordingly, the Third Party Service Providers are hereby restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

    i. providing services to Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts;

---

manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise.

      ii. secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with any computer files, data, business records, documents or any other records or evidence relating to the Defendants' User Accounts, Merchant Storefronts, Defendants' Assets and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products; and

      iii. knowingly instructing, aiding, or abetting any other person or business entity in engaging in any of the activities referred to in subparagraphs 1(a)(i) through 1(a)(vii), 1(b)(i) through 1(b)(ii) and 1(c)(i) through 1(c)(ii) above.

2. As sufficient cause has been shown, the asset restraint granted in the TRO shall remain in place through the pendency of this litigation, including that:

   a) within seven (7) days of receipt of notice of this Order, any newly discovered Financial Institutions who are served with this Order shall locate and attach Defendants' Financial Accounts, shall provide written confirmation of such attachment to Plaintiff's counsel and provide Plaintiff's counsel with a summary report containing account details for any and all such accounts, which shall include, at a minimum, identifying information for Defendants and Defendants' User Accounts, contact information for Defendants (including mailing addresses and e-mail addresses), account numbers and account balances for any and all of Defendants' Financial Accounts.

3. As sufficient cause has been shown, the expedited discovery previously granted in the TRO shall remain in place through the pendency of this litigation, including that:

   a) Plaintiff may serve interrogatories pursuant to Rules 26 and 33 of the Federal Rules

of Civil Procedure as well as Local Civil Rule 33.3 of the Local Rules for the Southern and Eastern Districts of New York and Defendants who are served with this Order shall provide written responses under oath to such interrogatories within fourteen (14) days of service to Plaintiff's counsel.

b) Plaintiff may serve requests for the production of documents pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Defendants who are served with this Order, their respective officers, employees, agents, servants and attorneys and all persons in active concert or participation with any of them who receive actual notice of this Order shall produce all documents responsive to such requests within fourteen (14) days of service to Plaintiff's counsel.

c) Within fourteen (14) days after receiving notice of this Order, all Financial Institutions who receive service of this Order shall provide Plaintiff's counsel with all documents and records in their possession, custody or control (whether located in the U.S. or abroad), relating to any and all of Defendants' Financial Accounts, User Accounts and Merchant Storefronts, including, but not limited to, documents and records relating to:

   i. account numbers;
   ii. current account balances;
   iii. any and all identifying information for Defendants and Defendants' User Accounts, including names, addresses and contact information;
   iv. any and all account opening documents and records, including, but not limited to, account applications, signature cards, identification documents, and if a business entity, any and all business documents provided for the opening of each and every

        of Defendants' Financial Accounts;

v.    any and all deposits and withdrawal during the previous year from each and every of Defendants' Financial Accounts and any and all supporting documentation, including, but not limited to, deposit slips, withdrawal slips, cancelled checks and account statements;

vi.    any and all wire transfers into each and every of Defendants' Financial Accounts during the previous year, including, but not limited to, documents sufficient to show the identity of the destination of the transferred funds, the identity of the beneficiary's bank and the beneficiary's account number;

vii.    any and all User Accounts and account details, including, without limitation, identifying information and account numbers for any and all User Accounts that Defendants have ever had and/or currently maintain;

viii.    the identities, location and contact information, including any and all e-mail addresses, of Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them;

ix.    the nature of Defendants' businesses and operations, methods of payment, methods for accepting payment and any and all financial information, including, but not limited to, information associated with Defendants' User Accounts, a full accounting of Defendants' sales history and listing history under such accounts, and Defendants' Financial Accounts associated with Defendants' User Accounts; and

x.    Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Counterfeit

        Products, or any other products bearing one or more of the Happy Nappers Marks and/or Happy Nappers Works and/or marks or artwork that are confusingly or substantially similar to, identical to and constitute a counterfeiting and/or infringement of the Happy Nappers Marks and/or Happy Nappers Works.

d) Within fourteen (14) days of receipt of service of this Order, the Third Party Service Providers shall provide to Plaintiff's counsel all documents and records in its possession, custody or control (whether located in the U.S. or abroad) relating to Defendants' User Accounts and Defendants' Merchant Storefronts, including, but not limited to, documents and records relating to:

    i. any and all User Accounts and Defendants' Merchant Storefronts and account details, including, without limitation, identifying information and account numbers for any and all User Accounts and Defendants' Merchant Storefronts that Defendants have ever had and/or currently maintain with the Third Party Service Providers;

    ii. the identities, location and contact information, including any and all e-mail addresses of Defendants;

    iii. the nature of Defendants' businesses and operations, methods of payment, methods for accepting payment and any and all financial information, including, but not limited to, information associated with Defendants' User Accounts and Defendants' Merchant Storefronts, a full accounting of Defendants' sales history and listing history under such accounts and Defendants' Financial Accounts with any and all Financial Institutions associated with Defendants' User Accounts and Defendants' Merchant Storefronts; and

  iv. Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Counterfeit Products, or any other products bearing the Happy Nappers Marks and/or Happy Nappers Works and/or marks or artwork that are confusingly or substantially similar to, identical to and constitute an infringement of the Happy Nappers Marks and/or Happy Nappers Works.

4. As sufficient cause has been shown, and pursuant to FRCP 4(f)(3), service may be made on, and shall be deemed effective as to Defendants if it is completed by one of the following means:

    a) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website (including NutStore, a large mail link created through Rmail.com or via website publication through a specific page dedicated to this Lawsuit accessible through ipcounselorslawsuit.com) where each Defendant will be able to download a PDF copy of this Order, to Defendants' e-mail addresses to be determined after having been identified by Alibaba and/or AliExpress pursuant to Paragraph V(C); or

    a) delivery of a message to Defendants through the same means that Plaintiff's agents have previously communicated with Defendants, namely the system for communications established by the Third Party Service Providers on their respective platforms, providing a link to a secure website (such as NutStore or a large mail link created through Rmail.com) where each Defendant will be able to download PDF copies of this Order.

5. As sufficient cause has been shown, that such alternative service by electronic means ordered in the TRO and herein shall be deemed effective as to Defendants, Third Party

Service Providers and Financial Institutions through the pendency of this action.

6. As sufficient cause has been shown, service of this Order shall be made on and deemed effective as to the Third Party Service Providers and Financial Institutions if it is completed by the following means:

   a) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PayPal will be able to download a PDF copy of this Order via electronic mail to PayPal Legal Specialist at EEOMALegalSpecialist@paypal.com;

   b) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where AliPay.com Co., Ltd., Ant Financial Services will be able to download a PDF copy of this Order via electronic mail Mr. Di Zhang, Member of the Legal & Compliance Department – IP, at di.zd@alipay.com;

   c) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Alibaba will be able to download a PDF copy of this Order via electronic mail to Ms. Rachel Wang, Legal Counsel, Alibaba Group at rachel.wy@alibaba-inc.com and Ms. Yujuan He, Paralegal, Alibaba Group at chloe.he@alibaba-inc.com

   d) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Payoneer Inc. will be able to download a PDF copy of this Order via electronic mail to Payoneer Inc.'s Customer Service Management at customerservicemanager@payoneer.com and Edward Tulin, counsel for Payoneer Inc., at Edward.Tulin@skadden.com; and

   e) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PingPong Global Solutions Inc. will be able to download a PDF copy of this Order via electronic mail to PingPong Global Solutions Inc.'s Legal Department

at legal@pingpongx.com.

7. Defendants are hereby given notice that they may be deemed to have actual notice of the terms of this Order and any act by them or anyone of them in violation of this Order may be considered and prosecuted as in contempt of this Court.

8. This Order shall remain in effect during the pendency of this action, or until further order of the Court.

9. Any Defendants that are subject to this Order may appear and move to dissolve or modify the Order on two (2) days' notice to Plaintiff or on shorter notice as set by the Court.

All Defendants having been served, the Clerk of Court is directed to unseal this case and all documents previously filed in conjunction with it.

Dated: New York, New York
February 18, 2020

SO ORDERED.

*Paul G. Gardephe*

Paul G. Gardephe
United States District Judge